# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

UGOCHUKWU GOODLUCK NWAUZOR; FERNANDO AGUIRRE-URBINA,
individually and on behalf of all those similarly situated, Plaintiffs-Appellees,

and

STATE OF WASHINGTON, Plaintiff-Appellee,

v.

THE GEO GROUP, INC., Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Western District of Washington

———————————

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF PETITION FOR REHEARING

———————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DANIEL TENNY
BRAD HINSHELWOOD
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION AND INTEREST OF THE UNITED STATES .........................1

STATEMENT .............................................................................................................3

ARGUMENT ..............................................................................................................5

THE SUPREMACY CLAUSE PRECLUDES APPLICATION OF THE
WASHINGTON MINIMUM-WAGE LAW TO WORK PROGRAMS
FOR FEDERAL IMMIGRATION DETAINEES ............................................5

I.      Application Of The State Minimum-Wage Law To Federal Immigration
        Detainees In The Voluntary Work Program Is Preempted ...................................5

II.     Application Of The State Minimum-Wage Law To Federal Immigration
        Detainees Is Likewise Impermissible Under The Intergovernmental-
        Immunity Doctrine................................................................................................. 12

CONCLUSION ......................................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                   **Page(s)**

*Abdullah v. Myers*,
   52 F.3d 324, 1995 WL 222187 (6th Cir. Apr. 13, 1995) ................................................10

*Adams v. Neubauer*,
   195 F. App'x 711 (10th Cir. 2006) ....................................................................................10

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
   790 F.3d 641 (6th Cir. 2015) ..............................................................................................4

*Alvarado-Guevara v. INS*,
   902 F.2d 394 (5th Cir. 1990) ....................................................................................5, 7, 10

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................................................5

*Bennett v. Frank*,
   395 F.3d 409 (7th Cir. 2005) ............................................................................................10

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
   797 F.3d 720 (9th Cir. 2015) ..............................................................................................4

*Danneskjold v. Hausrath*,
   82 F.3d 37 (2d Cir. 1996) ..................................................................................................10

*Dawson v. Steager*,
   586 U.S. 171 (2019) ..........................................................................................................16

*Franks v. Oklahoma State Indus.*,
   7 F.3d 971 (10th Cir. 1993) ..............................................................................................10

*Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*,
   112 F.3d 1119 (11th Cir. 1997) ........................................................................................10

*Gamble v. Minnesota State-Operated Servs.*,
   32 F.4th 666 (8th Cir. 2022) ............................................................................................10

*GEO Grp., Inc. v. Newsom,*
    50 F.4th 745 (9th Cir. 2022) ....................................................1, 5, 8, 12, 13, 14

*Guevara v. INS,*
    954 F.2d 733, 1992 WL 1029 (Fed. Cir. Jan. 6, 1992)..........................5, 7, 10

*Henthorn v. Department of the Navy,*
    29 F.3d 682 (D.C. Cir. 1994) ......................................................................10

*Loving v. Johnson,*
    455 F.3d 562 (5th Cir. 2006) ......................................................................10

*Matherly v. Andrews,*
    859 F.3d 264 (4th Cir. 2017) ......................................................................10

*Miller v. Dukakis,*
    961 F.2d 7 (1st Cir. 1992) ...........................................................................10

*Morgan v. MacDonald,*
    41 F.3d 1291 (9th Cir. 1994) .................................................................. 7, 10

*Ndambi v. CoreCivic, Inc.,*
    990 F.3d 369 (4th Cir. 2021) ................................................ 2, 6-7, 7, 9, 10, 11

*Nwauzor v. GEO Grp., Inc.,*
    540 P.3d 93 (Wash. 2023)...........................................................................15

*Nwauzor v. GEO Grp., Inc.,*
    127 F.4th 770 (9th Cir. 2025).........................4, 8, 9, 11, 12, 13, 14, 15, 16, 17

*Reno v. Flores,*
    507 U.S. 292 (1993) .....................................................................................5

*Ruelas v. County of Alameda,*
    108 F.4th 1208 (9th Cir. 2024) ...................................................................11

*Sanders v. Hayden,*
    544 F.3d 812 (7th Cir. 2008) ......................................................................10

*Smith v. Dart,*
    803 F.3d 304 (7th Cir. 2015) ......................................................................10

*Taylor Energy Co. v. Luttrell,*
   3 F.4th 172 (5th Cir. 2021) ................................................................4

*Tourscher v. McCullough,*
   184 F.3d 236 (3d Cir. 1999) ............................................................10

*United States v. King County,*
   122 F.4th 740 (9th Cir. 2024)................................... 13, 14, 16-17

*United States v. New Mexico,*
   455 U.S. 720 (1982) ..................................................................13-14

*United States v. Washington,*
   596 U.S. 832 (2022) ........................................................................14

*Villarreal v. Woodham,*
   113 F.3d 202 (11th Cir. 1997) .........................................................10

*World Trade Ctr. Disaster Site Litig., In re,*
   521 F.3d 169 (2d Cir. 2008) .............................................................4

**Statutes:**

Pub. L. No. 93-259, 88 Stat. 55 (1974) ..............................................6

Pub. L. No. 95-431, 92 Stat. 1021 (1978) ...................................4, 6, 9

6 U.S.C. § 112(b)(2) .............................................................................5

8 U.S.C. § 1231(g)(1) ...........................................................................5

8 U.S.C. § 1555(d) ......................................................................3, 6, 9

28 U.S.C. § 517....................................................................................1

29 U.S.C. § 203(e) ...............................................................................6

29 U.S.C. § 218(a) ...............................................................................6

Wash. Rev. Code § 49.46.010(3)(k).............................................15, 16

Wash. Rev. Code § 72.68.110 ................................................................16

**Rules:**

Fed. R. App. P. 29(b)(2) ...................................................................1

Ninth Circuit Rule 29-2 ...................................................................1

**Legislative Materials:**

*Departments of Commerce, Justice, and State, the Judiciary, and Related*
  *Agencies Appropriations for 1984: Hearings Before the Subcomm. on the*
  *Dep'ts of Commerce, Justice, & State, the Judiciary, & Related Agencies*
  *of the H. Comm. on Appropriations*, pt. 6, 98th Cong. (1983) ............5

*Hearing on H.R. 4645 and S. 2864 Before Subcomm. No. 2 of the H. Comm.*
  *on the Judiciary*, 81st Cong. (1950) .................................................3

H.R. 4431, 117th Cong. (2021) .........................................................6

H.R. Rep. No. 97-721 (1982) ...........................................................6

H.R. Rep. No. 98-478 (1983) ...........................................................6

S. Rep. No. 81-1258 (1950) .............................................................3

**Other Authorities:**

U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor*
  *Standards Act, 1938-2009*, https://perma.cc/PF9S-57RW ............6

U.S. Immigration & Customs Enf't, *Performance-Based National Detention Standards 2011*
  (Dec. 2016), https://perma.cc/Y7TS-JNXD ..............................2

Washington State Dep't of Corr., Policy No. 700.100, *Class III Work Programs*,
  https://perma.cc/88RM-DUJW ...............................................15

Washington State Dep't of Labor & Indus., *Minimum Wage*,
  https://perma.cc/SAU3-273M...................................................3

**INTRODUCTION AND INTEREST OF THE UNITED STATES**

Pursuant to 28 U.S.C. § 517, Federal Rule of Appellate Procedure 29(b)(2), and Circuit Rule 29-2, the United States submits this brief as amicus curiae in support of the defendant-appellant's petition for panel rehearing and rehearing en banc.

In enforcing the immigration laws, the United States detains aliens pending their removal or a decision on removal. The United States generally does not build and operate its own immigration-detention facilities, and instead contracts with other entities. *See GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc). Here, appellant GEO Group carries out federal immigration-detention operations at a facility in Tacoma, Washington (the NWIPC), under contract with the Department of Homeland Security (DHS).

Pursuant to Congressional authorization, the federal government generally requires contractors to operate a Voluntary Work Program (VWP or Program) with the aim of reducing the "negative impact of confinement … through decreased idleness, improved morale and fewer disciplinary incidents." 3-ER-516. The Program allows detainees to perform work for the operation of the facility in which they are housed, such as cooking, laundry, and cleaning. For decades, Congress has authorized the use of appropriations for allowances for detainees in such voluntary programs. Congress last prescribed the rate for such allowances in the 1979 appropriations act at $1/day, and has not raised the allowance in the ensuing decades. DHS's current Performance-Based National Detention Standards—which are incorporated into

detention-services contracts and require contractors to make the Program available—state that detainees must be provided an allowance of "at least $1.00 (USD) per day." 3-ER-516, 518.[1] Contractors may provide additional allowances, but any such allowances cannot be reimbursed by the federal government.

Every court of appeals to have considered the question has agreed that detainees in the Voluntary Work Program, performing labor within and for the detention facility, are to receive at least $1/day and are not subject to the Fair Labor Standards Act (FLSA) or state minimum-wage laws. *See, e.g.*, *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 373 (4th Cir. 2021). And those holdings are consistent with settled law from every circuit that individuals in detention settings more generally, performing labor within and for detention facilities, are not employees subject to the FLSA's minimum-wage requirements.[2]

At issue here is Washington's effort to apply its state minimum-wage law to federal immigration detainees, while exempting all state detainees from its requirements. Instead of the $1/day rate that Congress and DHS have authorized for the Program—or even the $40/week that Washington pays inmates in its own

---

[1] U.S. Immigration & Customs Enf't (ICE), *Performance-Based National Detention Standards 2011* § 5.8(V)(K) (Dec. 2016), https://perma.cc/Y7TS-JNXD.

[2] Our submission is limited to circumstances of the kind presented here, in which detainees perform work for the facility operator, for the operation of the facility in which they are housed. It does not address other circumstances, such as a detainee working for an employer outside the facility.

prisons—the State maintains that immigration detainees are entitled to $16.66/hour.[3] That result is barred under the Supremacy Clause, whether viewed through the lens of preemption or intergovernmental immunity.

In upholding the application of Washington's minimum-wage law to federal immigration detainees, the panel majority misinterprets federal law, disregards Circuit precedent, disrupts a national program, and creates significant tension with decisions of other courts of appeals.  Rehearing en banc is thus warranted.

## STATEMENT

For over 70 years Congress has authorized provision of "allowances (at such rate as may be specified from time to time in the appropriation Act involved) to aliens, while held in custody under the immigration laws, for work performed." 8 U.S.C. § 1555(d).  Congress reasoned from the outset that the purpose of a work program for immigration detainees—including the provision of modest allowances— is to promote good order and improved morale in detention settings.  *See Hearing on H.R. 4645 and S. 2864 Before Subcomm. No. 2 of the H. Comm. on the Judiciary*, 81st Cong. 21-22 (1950); S. Rep. No. 81-1258, at 2 (1950).  DHS now implements that special statutory authorization by requiring operators of facilities to provide the Voluntary Work Program, and DHS has explained that the Program is designed to achieve those same goals.  *See* 3-ER-516.

---

[3] Washington State Dep't of Labor & Indus., *Minimum Wage*, https://perma.cc/SAU3-273M.

Congress has expressly capped the amount DHS may reimburse for work performed under the Program.  Congress set that rate at $1/day in 1979 and has not raised it since.  Pub. L. No. 95-431, 92 Stat. 1021, 1027 (1978).  DHS standards accordingly provide for an allowance of "at least $1.00 (USD) per day," 3-ER-518, and DHS provides facilities the $1/day prescribed by Congress while authorizing contractors to pay greater than $1/day and thus incur unreimbursed costs.

In this case, detainees and the State of Washington urge that in Washington State, unlike in the rest of the Nation, detainees should be paid not the $1/day prescribed by federal law, but the $16.66/hour that would apply if they were employed in the private sector in the State.  The district court agreed, and the panel affirmed by a 2-1 vote, rejecting, as relevant here, the arguments put forward by a contractor that application of the State's minimum wage violates the Supremacy Clause.[4]

---

[4] The government takes no position on the separate invocation of the doctrine of derivative sovereign immunity, other than to note that this Court's precedent cited by the panel is erroneous and contrary to decisions of other circuits because it confuses derivative sovereign immunity with the distinct government contractor defense.  *Compare Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 770 (9th Cir. 2025) (citing *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015)), *with In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 193 (2d Cir. 2008), *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 645 (6th Cir. 2015), and *Taylor Energy Co. v. Luttrell*, 3 F.4th 172, 176-77 (5th Cir. 2021).

# ARGUMENT

## THE SUPREMACY CLAUSE PRECLUDES APPLICATION OF THE WASHINGTON MINIMUM-WAGE LAW TO WORK PROGRAMS FOR FEDERAL IMMIGRATION DETAINEES

### I. Application Of The State Minimum-Wage Law To Federal Immigration Detainees In The Voluntary Work Program Is Preempted

**A. 1.** Aliens held in immigration detention are in the federal government's custody pursuant to its broad, and uniquely federal, authority over immigration. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 305-06 (1993); *Arizona v. United States*, 567 U.S. 387, 395 (2012). Federal law thus authorizes DHS to "arrange for appropriate places of detention," 8 U.S.C. § 1231(g)(1), which includes the authority to contract for detention on the Secretary's behalf, 6 U.S.C. § 112(b)(2); *GEO Grp.*, 50 F.4th at 751, 757 n.6.

For years, Congress has authorized, and contractors have conducted, a Voluntary Work Program at immigration-detention facilities. It has long been the shared understanding of Congress, the Executive, and the judiciary that participants in the Program are compensated at a minimum rate of $1/day.[5] Congress has also repeatedly considered, but never enacted, proposals for increases in the rate, including

---

[5] *See, e.g.*, *Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations for 1984: Hearings Before the Subcomm. on the Dep'ts of Commerce, Justice, & State, the Judiciary, & Related Agencies of the H. Comm. on Appropriations*, pt. 6, 98th Cong. 135, 335, 617-18 (1983); *Guevara v. INS*, 954 F.2d 733, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992) (per curiam) (unpublished table decision); *Alvarado-Guevara v. INS*, 902 F.2d 394, 396 (5th Cir. 1990) (per curiam).

for 1981, 1982, 1983, and 1984, and as recently as 2021. *See* H.R. Rep. No. 97-721, at 39 (1982); H.R. Rep. No. 98-478, at 23 (1983) (Conf. Rep.); H.R. 4431, 117th Cong. § 221 (2021).

In establishing this payment scheme, Congress chose not to incorporate federal minimum-wage standards. In 1974, Congress expanded the FLSA—which then required employers to pay covered employees a minimum wage of around $2.00/hour[6]—to cover individuals "employed" by the federal government. Pub. L. No. 93-259, § 6(a)(2), 88 Stat. 55, 58-59 (1974). Yet, Congress continued to specify paying detainees "at a rate not in excess of $1 per day," 92 Stat. at 1027, thus making clear that it did not consider detainees performing labor within and for the detention facility as part of the Program to be "employed" within the meaning of the FLSA. 29 U.S.C. § 203(e). Instead, Congress reserved to itself authority to set the allowance rate through appropriations. 8 U.S.C. § 1555(d).[7]

Accordingly, every court of appeals to have previously considered the issue has held that immigration detainees performing labor within and for the detention facility as part of the Program are not employees for FLSA purposes. *See Ndambi*, 990 F.3d

---

[6] U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://perma.cc/PF9S-57RW.

[7] Preemption here does not arise from the FLSA, *see* 29 U.S.C. § 218(a), but from the impact that the application of state law would have on the operation of the Program to perform work within the facility in support of facility operations, as established by statute and the implementing Performance-Based National Detention Standards and contracts.

at 374; *Alvarado-Guevara*, 902 F.2d at 396; *Guevara*, 1992 WL 1029. Most recently, the Fourth Circuit explained that the "FLSA was enacted to protect workers who operate within 'the traditional employment paradigm,'" but "[p]ersons in custodial detention … are not in an employer-employee relationship" with the entity that detains them "but in a detainer-detainee relationship" that is "simply not comparable to the 'free labor situation of true employment.'" *Ndambi*, 990 F.3d at 372. And the court determined that "the nonemployee-status of detainees is not altered by the private, for-profit nature of the [federal-contractor operated] detention facility." *Id.* at 374. Under federal law, it is thus clear that the minimum allowance for Program participants is $1/day.

**2.** Application of Washington's minimum-wage law in these circumstances is at odds with the Voluntary Work Program that Congress has created, as well as the federal government's control over immigration detention. Congress constructed a nationwide work program for which the minimum payment would be $1/day. Washington has no authority to override that determination by requiring that federal immigration detainees in that one state will be owed a $16.66/hour minimum wage. The statutory structure that Congress created does not contemplate such a role for states or state law in governing the Program.

Moreover, as discussed, Congress's purpose in authorizing the Program was to foster good order in immigration-detention facilities. *See Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994) (recognizing similar goals for prison work programs:

"'occupy idle prisoners, reduce disciplinary problems'").  In the context of immigration detainees performing work for the operation of the immigration-detention facility, it is for Congress to determine whether a wage floor usually applicable to private employment in non-custodial settings is warranted, particularly given that application of state standards would mean some detainees may earn substantial pay while others earn nothing.  *See* 3-ER-516 (recognizing that VWP positions may not be available to all detainees).  Similarly, it is for Congress to determine whether to permit wide disparities in compensation across immigration-detention facilities nationwide.  *See Nwauzor*, 127 F.4th at 782 (Bennett, J., dissenting) (recognizing that, under the majority's approach, "[a] detainee [could] receive more than $16.00 per hour in Washington and $1.00 per day in Nevada for performing the same work").  By establishing a reimbursable floor and giving *contractors* discretion to go above that, Congress did not invite states to impose radically different minimum requirements.

 **B.**  The panel's contrary conclusion is incorrect in multiple respects, runs contrary to Circuit precedent, and creates significant tension with the case law of other circuits.

 **1.**  The majority erred, for example, in applying a "presumption against preemption," *Nwauzor*, 127 F.4th at 768, contrary to this Court's recent admonition that "the presumption does not apply when a state law would interfere with inherently federal relationships."  *GEO Grp.*, 50 F.4th at 761.  As Judge Bennett explained in

dissent, Circuit precedent requires a "presumption *for* preemption" in cases involving

"'active frustration of the federal government's ability to discharge its operations,'"

such as here, where state law "displaces the contractual floor established by

Congress," and "dictates the terms on which federal detainees perform work under

the VWP authorized by Congress." *Nwauzor*, 127 F.4th at 781 (Bennett, J.,

dissenting).

The majority also misinterpreted federal law, concluding that the $1/day rate

limiting DHS's use of appropriated funds for allowances is inapplicable. *Nwauzor*, 127

F.4th at 768-69. This interpretation is contrary to the established view of all three

branches of government, *supra* pp. 5-6, and to the text of the relevant provisions.

8 U.S.C. § 1555(d) provides that Congress need only "specif[y] from time to time" the

rate through its appropriations acts, so when Congress specified the rate and never

changed it, the rate remained in force even if the underlying appropriation did not.

And both provisions expressly apply to all detainees "while held in custody under the

immigration laws," with no carve-out for detainees in contractor-operated facilities.

*Id.*; 92 Stat. at 1027.

**2.** In addition to the express $1/day enactment, uniform precedents confirm

that immigration detainees working within their facilities are treated differently from

other workers for purposes of minimum-wage requirements, and Congress has

operated on this understanding for decades. *See Ndambi*, 990 F.3d at 371 n.1, 374; *see*

9

*also Alvarado-Guevara*, 902 F.2d at 396 (Program participants not subject to federal minimum wage); *Guevara*, 1992 WL 1029, at *1 (same).

Moreover, under the panel's approach, immigration detainees at NWIPC would be treated unlike any detainees under federal law. Decisions of this Circuit and every other circuit have universally recognized that detainees in various forms of custodial detention working to support the operation of the facility—whether criminal inmates,[8] pretrial detainees,[9] or civil detainees[10]—are not employees subject to the federal minimum wage, including where private contractors are involved.[11] And neither the majority nor plaintiffs has identified any other state that applies its

---

[8] *See, e.g.*, *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (per curiam); *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005); *Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*, 112 F.3d 1119, 1124 n.6 (11th Cir. 1997); *Danneskjold v. Hausrath*, 82 F.3d 37, 43-44 (2d Cir. 1996); *Abdullah v. Myers*, 52 F.3d 324, 1995 WL 222187, at *1 (6th Cir. Apr. 13, 1995) (unpublished table decision); *Morgan*, 41 F.3d at 1293; *Henthorn v. Department of the Navy*, 29 F.3d 682, 686-87 (D.C. Cir. 1994); *Franks v. Oklahoma State Indus.*, 7 F.3d 971, 973 (10th Cir. 1993).

[9] *See, e.g.*, *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015); *Tourscher v. McCullough*, 184 F.3d 236, 243-44 (3d Cir. 1999); *Villarreal v. Woodham*, 113 F.3d 202, 206-07 (11th Cir. 1997).

[10] *See, e.g.*, *Gamble v. Minnesota State-Operated Servs.*, 32 F.4th 666, 670 (8th Cir. 2022); *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017); *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008); *Guevara*, 1992 WL 1029; *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (per curiam).

[11] *See Ndambi*, 990 F.3d at 374; *Bennett*, 395 F.3d at 410; *Adams v. Neubauer*, 195 F. App'x 711, 713 (10th Cir. 2006); *Danneskjold*, 82 F.3d at 43-44; *Abdullah*, 52 F.3d at 324.

generally applicable minimum-wage laws to such prisoners or other detainees, much less to federal detainees.[12]

**3.** Absent further action from Congress, the panel's decision would at a minimum imperil the Voluntary Work Program's ongoing viability. Application of Washington's minimum wage would replace the $1/day floor with a floor of $16.66/hour ($133.28 for an eight-hour day)—a 130-fold increase in pay. Congress never expected detainees to be paid so much, and contractors are unlikely to agree to operate the Program on terms that would inevitably lead to considerable unreimbursed costs. Indeed, the Program has been suspended at the NWIPC since entry of the district court's injunction. The application of Washington's minimum-wage law going forward would threaten a similar consequence on a permanent basis and risk the same result at facilities in other states within this Circuit. To maintain the Program as Congress intended, the government would need "to either operate the NWIPC itself, something ICE does not do and is contrary to congressional policy, contract with the state, … or have no immigration detention facilities … in the State of Washington." *Nwauzor*, 127 F.4th at 782 (Bennett, J., dissenting) (footnote omitted).

---

[12] *See Ruelas v. County of Alameda*, 108 F.4th 1208 (9th Cir. 2024) (California state prisoners working within prison for private contractor are not employees under state minimum-wage law); *Ndambi*, 990 F.3d at 371 n.1.

## II. Application Of The State Minimum-Wage Law To Federal Immigration Detainees Is Likewise Impermissible Under The Intergovernmental-Immunity Doctrine

"Intergovernmental immunity 'prohibits state laws that either regulate the United States directly or discriminate against the Federal Government or those with whom it deals (*e.g.*, contractors).'" *GEO Grp.*, 50 F.4th at 758 (emphases and alteration omitted). Each of these independent inquiries also establishes that application of Washington's minimum-wage law to individuals in federal immigration detention is impermissible.

**A. 1.** There is no dispute that if the federal government operated the NWIPC and implemented the Voluntary Work Program through federal employees—rather than federal contractors—intergovernmental-immunity principles would bar application of state minimum-wage laws to these detainees. *See Nwauzor*, 127 F.4th at 761, 763; *id.* at 774 & n.4 (Bennett, J., dissenting). A state acquires no greater authority to regulate the terms on which federal detainees may participate in the federal Program simply because the government structures its implementation of the immigration laws to detain persons in DHS custody in contractor-operated facilities. In either circumstance, federal immigration detainees are in the custody of the United States and the United States is exercising its authority to permit detainees to participate in the Program, subject to the uniform nationwide conditions imposed by Congress and DHS.

As this Court reaffirmed in *GEO Group*, even a generally applicable state law is impermissible where it "would control federal operations" because "enforcement of the substance of the regulation against the contractors would have the same effect as direct enforcement against the Government." 50 F.4th at 760 (quotation marks and alterations omitted); *see also id.* (collecting cases). The intergovernmental-immunity doctrine does not permit states to "prohibi[t] ICE from exercising its discretion to arrange for immigration detention in the privately run facilities it has deemed appropriate." *Id.* at 761.

**2.** The panel majority's contrary conclusion is inconsistent with multiple recent decisions of this Court. *See Geo Grp.*, 50 F.4th at 754-58; *United States v. King County*, 122 F.4th 740, 756-57 (9th Cir. 2024).

The majority was wrong to suggest that Washington's minimum-wage law does not "contro[l] federal operations." *Nwauzor*, 127 F.4th at 761-63. Under the federal statutory scheme, the detainees are the responsibility of the federal government, and the application of the minimum-wage law directly affects the terms of that custodianship. At a minimum, the state enactment does not merely involve a cost to the contractor that might indirectly be passed along to the federal government, but rather alters the terms of a mandatory federal program that governs the relationship with federal immigration detainees.

Moreover, the consequences of applying the state law here clearly illustrate that the effect would be to control federal operations. *See United States v. New Mexico*, 455

U.S. 720, 735 n.11 (1982) ("It remains true, of course, that state taxes on contractors are constitutionally invalid if they … substantially interfere with [the federal government's] activities."). It has yet to be determined how DHS will need to change any contracts with detention facilities in Washington in light of the panel's decision. But a likely result is that DHS will need to cease operating the Voluntary Work Program within the State, as it has done during this litigation. If applying the state minimum wage forces the government to change how it operates the NWIPC in this way, the State has exerted impermissible control over federal operations under this Circuit's precedents. *See King County*, 122 F.4th at 756-57 ("forcing ICE either to stop using Boeing Field or to use government-owned planes there" impermissibly controls "ICE's transportation and deportation operations"); *GEO Grp.*, 50 F.4th at 757-58 (forcing ICE "to cease its ongoing immigration detention operations in California and adopt an entirely new approach in the state" impermissibly controls federal operations).

**B. 1.** Applying the minimum-wage law here would independently contravene principles of intergovernmental immunity by discriminating against the federal government's detention operations. "[A] state law discriminates against the Federal Government or its contractors if it single[s them] out for less favorable treatment…." *United States v. Washington*, 596 U.S. 832, 839 (2022) (second alteration in original) (quotation marks omitted). Here, Washington has exempted its own detention operations from the minimum-wage law, excluding from the definition of "employee"

"[a]ny resident, inmate, or patient of a state, county, or municipal correctional, detention, treatment or rehabilitative institution." Wash. Rev. Code § 49.46.010(3)(k). Thus, when Washington operates labor programs within its own correctional or other detention facilities, participants are generally paid substantially less than the minimum wage. *See* Washington State Dep't of Corr., Policy No. 700.100, *Class III Work Programs*, https://perma.cc/88RM-DUJW. Similarly, if DHS contracted with a locality to house immigration detainees in a county jail, the locality would have no obligation to pay state minimum wage to detainees when operating the Program. *See Nwauzor v. GEO Grp., Inc.*, 540 P.3d 93, 99 (Wash. 2023).

The only detainees in Washington that must be paid the minimum wage for work supporting the operation of their facilities are thus federal detainees in facilities owned and operated by a private contractor. The Washington law's "application to GEO" thus "has the clear effect of targeting only the federal government." *Nwauzor*, 127 F.4th at 773 (Bennett, J., dissenting). The law "punishes the federal government for its policy choice to use private contractors and treats the federal government differently from state facilities," which is "the very definition of a state affording itself better treatment than it affords the United States." *Id.* at 774.

**2.** The majority's contrary conclusion is inconsistent with Supreme Court and Circuit precedent.

The majority held the law to be nondiscriminatory because the state minimum wage would apply if Washington were to contract with a private-detention facility.

15

*Nwauzor*, 127 F.4th at 763-64.  But Washington law provides that there can be no such facilities.  Wash. Rev. Code § 72.68.110.  Washington cannot gerrymander its way out of a finding of discrimination by comparing federal detainees to a nonexistent category.

In upholding this unequal treatment, the majority misapprehended the relevant analysis.  Supreme Court precedent dictates that the proper comparison is not to hypothetical "private employers covered by the [law]," but rather to "those who are exempt from the [law]," *i.e.*, "to Washington state-run detention facilities, the group favored."  *Nwauzor*, 127 F.4th at 774 & n.5, 777 (Bennett, J., dissenting) (cleaned up) (citing *Dawson v. Steager*, 586 U.S. 171, 178-79 (2019)).

Moreover, "[w]hether a State treats similarly situated state and federal [entities] differently depends on how the State has defined the favored class."  *Dawson*, 586 U.S. at 177.  Here, the minimum-wage law defines the favored class as "state, county, or municipal correctional, detention, treatment or rehabilitative institution[s]."  Wash. Rev. Code § 49.46.010(3)(k).  The law thus draws lines between exempted detention facilities only based on a facility's characterization as state, county, or municipal; it does not differentiate between publicly and privately operated facilities generally, or based on any substantive differences inherent in that distinction.  The majority runs afoul of Supreme Court and Circuit precedent in attempting to supply and rely on "'significant differences'" between government and private entities, *see Nwauzor*, 127 F.4th at 765, that do not appear on the face of the state law itself.  *See King County*, 122

16

F.4th at 757 (declining to permit county to rely on "'significant differences'" between entities to "'justify the inconsistent treatment'" where the face of the county action did "not draw lines based on" those differences (alteration omitted)).  In any event, there is "no relevant difference between the work programs for detainees at public detention facilities operated by government entities and detention facilities operated by entities like GEO."  *Nwauzor*, 127 F.4th at 775 (Bennett, J., dissenting).

The only extant, similarly situated entities that do not benefit from the Washington law's exemption are federal detention institutions, including immigration-detention facilities operated by federal contractors.  Accordingly, the law impermissibly discriminates against the federal government in violation of intergovernmental-immunity principles.  Washington is of course free to structure its own detention operations as it sees fit.  But Washington may not use its own judgments to force the federal government to either make the same choice about whether to contract out its detention operations or permit its federal contractors to be subjected to disfavored treatment.

**CONCLUSION**

For the foregoing reasons, the Court should grant the petition.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DANIEL TENNY
BRAD HINSHELWOOD

/s/ McKaye L. Neumeister
McKAYE L. NEUMEISTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7231*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8100*
*McKaye.L.Neumeister@usdoj.gov*

March 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(b)(4) and Ninth Circuit Rule 29-2(c)(2) because it contains 4,120 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ McKaye L. Neumeister
McKaye L. Neumeister

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

_/s/ McKaye L. Neumeister_
McKaye L. Neumeister