Nos. 21-36024 & 21-36025

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UGOCHUKWO GOODLUCK NWAUZOR, FERNANDO AGUIRRE-URBINA,
individually and on behalf of those similarly situated,
*Plaintiffs-Appellees*,

and

STATE OF WASHINGTON,
*Plaintiff-Appellee*,

v.

THE GEO GROUP, INC.,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Washington
Civil Case Nos. 3:17-cv-05769 & 3:17-cv-05806
(Honorable Robert J. Bryan)

**DEFENDANT-APPELLANT THE GEO GROUP, INC.'s
MOTION TO STAY THE MANDATE PENDING DISPOSITION
OF A PETITION FOR CERTIORARI**

August 18, 2025

Charles J. Cooper
Michael W. Kirk
J. Joel Alicea
Joseph O. Masterman
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com
mkirk@cooperkirk.com

*Attorneys for Defendant-Appellant The GEO Group, Inc.*

## INTRODUCTION

Defendant-Appellant The GEO Group, Inc. ("GEO") respectfully requests that this Court stay issuance of its mandate pending the resolution of GEO's forthcoming petition for writ of certiorari in the Supreme Court. Fed. R. App. P. 41(d).

A party seeking a stay of the mandate need only show that a petition for writ of certiorari "present[s] a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). A party "need not demonstrate that exceptional circumstances justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). Rather, a stay of the mandate "will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay." Circuit Rule 41-1. Staying the mandate "is entrusted to [this Court's] sound discretion." *Bryant*, 886 F.2d at 1528.

GEO's forthcoming petition for certiorari easily satisfies this modest showing. This case presents several substantial questions of constitutional law on which Courts and jurists have disagreed, as evidenced by the seven Judges of this Court in dissent at either the panel or rehearing stage. The petition will implicate fundamental questions of federal power, federal-state relations, and federal immunity as guaranteed by the Supremacy Clause. Under these circumstances, a petition for certiorari would not be frivolous or filed merely for delay.

Good cause likewise exists for a stay. The ultimate resolution of these questions will bring far-reaching consequences for federal immigration policy, as the United States has already emphasized in this case with statements of interest or amicus briefs filed by both the Biden and Trump administrations.

The mandate should be stayed while the Supreme Court considers whether to take up these legally and practically important questions over which jurists and Courts have diverged.[1]

## ARGUMENT

**I.  The Petition for Certiorari Will Present Substantial Questions.**

A divided panel of this Court held that the State of Washington may force a federal contractor operating a federal immigration detention facility to pay federal immigration detainees higher wages for voluntary work than the State pays its own detainees or than federal law directs or allows. Under the doctrine of intergovernmental immunity, which arises from the Supremacy Clause, U.S. CONST. art. VI, cl. 2, states may not "directly regulate or discriminate against" the Federal Government or those with whom it contracts. *United States v. Washington*, 596 U.S. 832, 835 (2022).

---

[1] In the event the mandate issues while this motion remains pending before the Court, GEO respectfully requests that the Court construe the motion as one to recall the mandate.

The question of whether the Supremacy Clause's guarantee of intergovernmental immunity bars Washington's efforts to direct the conduct of a federal contractor operating a federal immigration detention facility is substantial and one upon which jurists in this Circuit have disagreed. Judge Bennett explained in dissent at the panel stage that the analysis here "must compare the NWIPC to Washington state-run detention facilities." Panel Op. at 47 (Jan. 16, 2025), ECF No. 161 (Bennett, J., dissenting). And "[b]ecause all parties agree that Washington applies an exception to itself that it does not extend to the NWIPC, the [WMWA] discriminates against a federal contractor and thus violates intergovernmental immunity principles." *Id*. The United States agreed with that analysis. *See* Statement of Interest of the United States at 9–16, *Nwauzor v. GEO Grp., Inc.*, No. 17-cv-05769 (W.D. Wash. Aug. 20, 2019), ECF No. 185 ("U.S. SOI"); Br. for the United States as Amicus Curiae in Supp. of Appellant at 25–26 (Feb. 21, 2024), ECF No. 114 ("U.S. Amicus Br.").

At the en banc stage, six more Judges of this Court dissented. Judge Collins—joined by Judge R. Nelson and Judge Bress—dissented on the grounds set forth in Judge Bennett's panel dissent. *See* En Banc Op. at 34 (Aug. 13, 2025), ECF No. 162 ("I agree that the panel majority's decision contravenes controlling Ninth Circuit and Supreme Court precedent applying the doctrines of intergovernmental immunity and federal preemption." (Collins, J., dissenting)). Judge Bumatay, joined by Judge

3

Callahan and Judge VanDyke, also dissented from the denial of rehearing. *See id*. at 7 (Bumatay, J., dissenting); *id.* at 14 ("So the fundamental question here is whether the Supremacy Clause protects a federal program, performed by federal contractors, from state regulation. The answer must be 'yes.' "). Because GEO performs a federal function in operating the federal immigration detention facility, Judge Bumatay explained, "it steps into the shoes of the federal government for Supremacy Clause purposes." En Banc Op. at 14 (Bumatay, J., dissenting).

Further, the United States has now three times—during the first Trump administration, during the Biden administration, and during the second Trump administration—agreed that Washington's effort violates the Supremacy Clause. In 2019, the United States filed a statement of interest in the District Court observing that "[t]his case presents a compelling example of a State discriminating against the Federal Government and those with whom it deals." U.S. SOI at 4. And in 2024, the United States filed an amicus brief in this Court observing that, if applied to the VWP, the WMWA would "contraven[e] intergovernmental immunity because it would make federal detainees subject to provisions that do not apply, and never have applied, to persons in state custody." U.S. Amicus Br. at 2; *see also* Br. for the United States as Amicus Curiae in Supp. of Petition for Rehearing (Mar. 20, 2025), ECF No. 157.

The question of the Federal Government and GEO's intergovernmental immunity from regulation by the State of Washington in the operation of federal immigration detention facilities is plainly substantial.

Were that not enough, this case implicates two other constitutional doctrines as well. First, the panel held that Washington's regulation of the federal facility did not violate the doctrine of preemption. Although "[f]ew areas of the law are as exclusively within the domain of the federal government as immigration," the WMWA now "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in that area. Panel Op. at 49–50 (Bennett, J., dissenting) (quoting *The GEO Group, Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (en banc)). As Judge Bennett and the United States both have explained, "Congress has recognized the benefits of the VWP for decades, but the majority's holding 'imperils the VWP's ongoing viability' " and "creates dramatic distinctions in the allowances applicable to detainees based on the happenstance of the location of their detention and the operator of their detention facility." *Id*. at 49 (quoting U.S. Amicus Br. at 15–16) (cleaned up).

The panel's preemption ruling squarely conflicts with the holdings of the Fifth and Federal Circuits, both of which concluded that the governing federal statutes limit payments to VWP participants to $1.00 per day. *See Alvarado Guevara v. INS*,

5

902 F.2d 394, 396 (5th Cir. 1990); *accord Guevara v. INS*, No. 90-1476, 1992 WL 1029, at *2 (Fed. Cir. Jan. 6, 1992) (unpublished).

Second, the panel majority held that GEO is not entitled to derivative sovereign immunity as a federal contractor because its contract with ICE purportedly gives GEO discretion to pay VWP participants more than $1.00 per day. This part of the majority opinion created a split with Supreme Court precedent and other Circuit caselaw, under which GEO would be entitled to derivative sovereign immunity if the contract did merely authorize (rather than direct) GEO to pay VWP participants $1.00 per day. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20–21 (1940); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–68 (2016); *accord, e.g., Taylor Energy Co. v. Luttrell*, 3 F.4th 172, 176 (5th Cir. 2021).

GEO's petition would thus raise several substantial questions of constitutional law implicating fundamental questions of federal power over which jurists and the federal Court of Appeals have disagreed.

## II. Good Cause Exists for a Stay of the Mandate Pending Certiorari.

Good cause exists for a stay. As a practical matter, a stay of the mandate would simply maintain the status quo. The district court, upon GEO's unopposed motion, stayed the enforcement of its judgment pending appeal and waived the requirement of bond. *See* Order Granting Defendant the Geo Group, Inc.'s Motion to Stay Enforcement of Judgment Pending Appeal and for Waiver of Supersedeas Bond,

*Nwauzor*, No. 17-cv-05769 (W.D. Wash. Dec. 8, 2021), ECF No. 562. That order has remained in effect since 2021. *Id.*

On the other hand, the issuance of the mandate before the Supreme Court's review of GEO's petition for certiorari would bring serious real-world consequences for the Federal Government, especially as to the uniquely federal interest in immigration policy. After all, the Federal Government is guaranteed "plenary or near plenary power over immigration issues." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1165 (9th Cir. 2019). Indeed, "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quotation marks omitted). And this complete authority includes the "power to detain aliens in connection with removal." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation marks omitted).

Because the Federal Government itself generally does not operate immigration detention facilities, operating instead through contractors, issuance of the mandate could subject all ICE facilities in the Ninth Circuit to all manner of state regulations and control. More broadly, as Judge Bumatay noted in dissent, "[u]nder this court's decision, any State can impair any federal policy—no matter how central to the federal government—so long as the State regulates federal contractors rather than the federal government itself." En Banc Op. at 14 (Bumatay, J., dissenting). "Doing so would be unworkable—granting States the power to undermine federal

7

operations based on policy disagreements whenever federal contractors are involved." *Id.*

The Supreme Court should have the chance to at least consider deciding the important and divisive questions presented here before that result may come to pass. GEO's petition for certiorari will raise substantial questions, and good cause supports maintenance of the status quo through a stay of the mandate.

## CONCLUSION

The Court should stay issuance of its mandate pending the Supreme Court's resolution of GEO's forthcoming petition for certiorari.

Dated: August 18, 2025

Respectfully submitted,

s/ *Michael W. Kirk*
Charles J. Cooper
Michael W. Kirk
J. Joel Alicea
Joseph O. Masterman
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
ccooper@cooperkirk.com
mkirk@cooperkirk.com

*Attorneys for Defendant-Appellant The GEO Group, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) and Ninth Circuit Rule 27-1(d) because this motion contains 1,698 words and is 8 pages in length, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 18, 2025                    /s/ *Michael W. Kirk*
                                                          Michael W. Kirk
                                                        *Attorney for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 18, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 18, 2025 /s/ *Michael W. Kirk*
Michael W. Kirk
*Attorney for Defendant-Appellant*